UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| R.A. ALLEN COMPANY, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>BELL SPORTS, INC.,<br><br>  Defendant. | CIVIL ACTION NO. |

## COMPLAINT

### Parties

1. Plaintiff, R.A. Allen Company, Inc. ("Allen") is a Massachusetts corporation with a principal place of business located in Concord, Massachusetts.

2. Defendant, Bell Sports, Inc. is, on information and belief, a California corporation with a principal place of business located in Rantoul, IL.

### Jurisdiction And Venue

3. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 271, which give rise to the remedies specified in 35 U.S.C. §§ 283-285.

4. The court has jurisdiction pursuant to 28 U.S.C. §1338(a). Venue lies in this district pursuant to 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(b).

5. The patent infringement alleged has been and is now being carried out within the District of Massachusetts and upon information and belief throughout the United States. The defendant has committed acts of patent infringement in this district.

6. This court has personal jurisdiction over the defendant because, on information and belief, it has regularly and systematically transacted business in this district, directly or through intermediaries, and committed acts of infringement in this district. Defendant has also placed infringing products into this district or knowing that products would be shipped into this district.

## Background

### *The Patent And Related Product*

7. Allen is the owner of United States Patent No. 8,636,184 B2, issued on January 28, 2014. (the "'184 Patent"). The '184 Patent relates to a compact folding bicycle carrier.

8. Employing the technology protected by the '184 Patent, in 2014, Allen procured the manufacturing of its Ultra Compact 2 Bike Rack and Ultra Compact 1 Bike Rack (the "Rack") by a factory-located in China. Allen sells the Racks, which employ the patented design, in the United States and throughout the world.

9. A letter dated May 20, 2016 was sent to Bell advising Bell of Allen's U.S. Letters Patent No. 8,636,184 B2 for said Rack demanding that Bell cease and desist from infringement of said '184 Patent. A copy of U.S. Letters Patent No. 8,636,184 B2 was enclosed with the May 20, 2016 letter.

10. The Rack employs a unique design, protected by the '184 Patent, which renders it a sturdy and stable rack for carrying bicycles on the back of a car, while allowing the Rack to be folded into a very small configuration that can be easily carried or stowed. The small configuration is also desirable because it requires a small shelf space for retail sales and lower shipping costs.

*The Infringing Product*

11. On information and belief, Bell markets and sells compact bicycle racks made in Taiwan under the names Overpass 200 and Overpass 300 ("Overpass Rack").

12. On information and belief, Bell engaged a Taiwanese manufacturer to produce the Overpass racks because it was looking to produce a duplicate of the Rack and to profit from the design imbedded in the Rack that permitted a sturdy, stable rack that could be folded into a very small configuration. The duplicate Rack requires small retail shelf space and allows for lower shipping costs.

13. On information and belief, at all relevant times, Bell was aware that key features of the design of the Rack were protected by the '184 Patent because, among other reasons, Bell was notified of the existence of the '184 Patent, sent a copy of the '184 Patent and Bell refused to discontinue the infringement when Allen called it to Bell's attention.

*Nature Of The Infringement*

14. The Overpass Rack infringes Claim 1 and Claim 8, the independent claims of the '184 Patent. With respect to Claim 1, that claim provides:

   a. "substantially T-shaped frame with a bracket at an upper end and an elongated body depending from said bracket, said bracket and elongated body being in a substantially perpendicular relationship".

   b. "a lower foot member pivotally mounted to said frame, said lower foot member movable between a folded or closed position and an opened or operational position, said lower foot member being in substantially parallel relationship with said frame when in said closed position, said lower foot member being pivoted away from said frame when in said operational position".

   c. ...a pair of articulated carrying members pivotally mounted so that they can be folded to a closed inoperable position to allow the Rack to assume a closed position for easy carrying and storage.

   d. carrying arms that hold the bicycles and support arms that support the carrying arms when the Rack is operable and in an open position but fold parallel to the elongated body of the T shaped frame when closed for storage.

3

15. The Overpass Rack infringes Claim 1, as follows:

   a. The Overpass Rack includes the substantially T-shaped frame with a bracket at an upper end and an elongated body depending from said bracket feature but conceals the T-shape configuration that permits the Overpass to function in the same manner as the Rack. It does so by shortening and/or bending the elongated body of the T-shaped frame and covering the functional T-shaped frame with a plastic cover. Despite the camouflage, the T shape orientation of the central bracket of the Overpass is what enables it to fold into a small configuration when not in use and thus imitate the functionality of the Rack.

   b. "[A] lower foot member pivotally mounted to said frame, said lower foot member movable between a folded or closed position and an opened or operational position, said lower foot member being in substantially parallel relationship with said frame when in said closed position, said lower foot member being pivoted away from said frame when in said operational position" also exists on the Overpass Rack.

   c. [A] pair of articulated carrying members pivotally mounted so that they can be folded to a closed inoperable position to allow the Rack to assume a closed position for easy carrying and storage is employed by the Overpass Rack.

   d. Carrying arms that hold the bicycles and support arms that support the carrying arms when the Rack is operable and in an open position but fold parallel to the elongated body of the T shaped frame when closed for storage are also included in the Overpass Rack.

16. With respect to Claim 8, that claim provides:

   a. a compact folding bicycle carrier for carrying at least one bicycle on a motor vehicles, said carrier comprising:

   b. a substantially T-shaped frame with a bracket at an upper end and an elongated body depending from said bracket, said bracket and elongated body in substantially perpendicular relationship;

   c. a lower foot member pivotally mounted to said elongated body, said lower foot member constrained for limited movement relative to said elongated body and movable between a folded or closed position and an opened or operational position, said lower foot member in substantially parallel relationship with said elongated body when in said closed position, said lower foot member pivoted away from said elongated body when in said operational position;

   d. a pair of articulated carrying members pivotally mounted to said bracket, each said articulated carrying member movable between a folded or closed position and an opened or extended position,

    e.    each said articulated carrying member includes a supporting arm and a carrying arm, one of each said supporting arm associated with one of said carrying arms, each said carrying arm has at least one cradle at one end for supporting a bicycle place thereon and an upper foot at its other end, one end of each said supporting arm is pivotally mounted to one side of said bracket for movement between opened and folded positions, each said carrying arm, at a position which is between said cradle and said upper foot, is pivotally mounted to an opposite end of its respective supporting arm for movement between opened and folded positions, each said supporting arm is pivotally movable in a first plane, each said carrying arm pivotally is movable in a second plane, said first plane being disposed in substantial perpendicular relationship to said second plane;

    f.    said carrying arm and supporting arm of each said articulated carrying member in substantially parallel relationship with said elongated body when said articulated carrying member is in its folded position;

    g.    when said lower foot member is in its operational position and said carrying member is in its extended position, said lower foot member and said upper feet are positioned to rest on a motor vehicle and said carrying arm is positioned to carry a bicycle placed thereon.

17.    The Overpass Rack infringes Claim 8 as follows:

    a.    With respect to subparagraphs (a) through (c), for the same reasons and in the same manner as set forth in paragraph 15(a) through 15(d) above.

    b.    With respect to subparagraphs (d) through (f) in that the same features exist, are employed by, and are part of the functionality of the Overpass Rack.

18.    The "T" configuration at the core of both the Rack and the infringing Overpass Rack provides the necessary separation to the pivot points for the carrying arms to permit the racks to carry bicycles when in the open position while permitting a compact package when not in use and stored. The employment of the substantially "T" shaped configuration of both racks dictates the "V" configuration that both the Rack and the Overpass Rack exhibit when in the open and operational position, underscoring the infringing nature of the Overpass Rack and the operational impact of the "T" configuration in each design.

19. Allen has given Bell notice of the '184 Patent and provided it with a copy of said '184 Patent and demanded that Bell cease and desist from infringement of the '184 Patent but Bell has refused.

## COUNT I

### (Patent infringement of the Patent by the Overpass 200 Rack)

20. The allegations set forth in paragraphs 1 through 19 are incorporated by reference the same as if fully set forth herein.

21. The Overpass 200 rack includes each and every element, or the equivalent thereof, of claim 1(a) through 1(d) of the '184 Patent. Bell thereby has unlawfully infringed, induced others to infringe, and committed acts of contributory infringement of the '184 Patent within the meaning of 35 U.S.C. §271(a), (b), and (c), without authority, by making, using, offering for sale, or selling the Overpass 200 rack within the United States after the '184 Patent issued or importing into the United States the Overpass 200 rack after the '184 Patent issued. Bell has refused to terminate its infringing activities and will continue to make, use, import, offer to sell and sell the infringing racks unless enjoined by the Court.

22. Bell's infringement was and is willful, thereby justifying increased damages under 35 U.S.C. §284.

23. Allen has been and will continue to be severely damaged by the unlawful infringement by Bell, and unless such infringement is abated and enjoined by this Court, ALLEN will suffer irreparable damage.

24. This is an exceptional case within the meaning of 35 U.S.C. §285 and ALLEN is entitled to recover its reasonable attorneys' fees.

## COUNT II

### (Patent infringement of the '184 Patent by the Overpass 300 Rack)

25. The allegations set forth in paragraphs 1 through 24 are incorporated by reference the same as if fully set forth herein.

26. The Overpass 300 rack includes each and every element, or the equivalent thereof, of claim 1(a) through 1(d) of the '184 Patent. Bell thereby has unlawfully infringed, induced others to infringe, and committed acts of contributory infringement of the '184 Patent within the meaning of 35 U.S.C. §271(a), (b), and (c), without authority, by making, using, offering for sale, or selling the Overpass 300 rack within the United States after the '184 Patent issued or importing into the United States the Overpass 300 rack after the '184 Patent issued. Bell has refused to terminate its infringing activities and will continue to make, use, import, offer to sell and sell the infringing racks unless enjoined by the Court.

27. Bell's infringement was and is willful, thereby justifying increased damages under 35 U.S.C. §284.

28. Allen has been and will continue to be severely damaged by the unlawful infringement by Bell, and unless such infringement is abated and enjoined by this Court, ALLEN will suffer irreparable damage.

29. This is an exceptional case within the meaning of 35 U.S.C. §285 and ALLEN is entitled to recover its reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, ALLEN prays for judgment against Bell and in favor of ALLEN that:

1. Jurisdiction is present and venue is proper.

2. United States Letters Patent No. 8,636,184 B2 is good and valid in law and claim 1 has been infringed by Bell.

3. Allen be awarded damages under 35 U.S.C. §284 for the unlawful and unauthorized infringement by Bell adequate to compensate Allen for the aforesaid patent infringement of the '184 Patent, including Allen's lost profits, but in no event less than a reasonable royalty for the infringed '184 Patent, plus prejudgment and post judgment interest.

4. The aforesaid patent infringements of Bell have been deliberate and willful, and, therefore, Allen should be awarded increased damages of three times the amount found or assessed under 35 U.S.C. §284.

5. A preliminary and permanent injunction be granted under 35 U.S.C. §283 enjoining Bell and its agents, representatives, servants, employees, officers, directors, successors, assigns and all those controlled by them or in active consort therewith, from further acts of infringement of claims 18 and 19 of the '184 Patent and requiring the destruction of all infringing products, including remaining inventory, all molds and tools of manufacture, and literature, manuals and other materials advertising or promoting the infringing products.

6. The case be deemed exceptional and Allen be awarded its reasonable attorneys' fees under 35 U.S.C. §285.

7. Allen be awarded all recoverable costs.

8. Allen be awarded such other and further relief as the court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial.

                R.A. ALLEN COMPANY, INC.,

                By its attorneys,

                /s/ Gary S. Matsko
                Richard L. Sampson
                BBO # 562012
                rsampson@davismalm.com
                Gary S. Matsko
                BBO # 324640
                gmatsko@davismalm.com
                DAVIS MALM & D'AGOSTINE, P.C.
                One Boston Place
                Boston, MA  02108
                (617) 367-2500

Dated: October 18, 2016

798872.1